IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NORTHEASTERN DIVISION

| | |
|---|---|
| MISTY DAWN LITTRELL ) | |
| ) | |
| v. ) | No. 2:10-0027 |
| ) | Judge Nixon/Bryant |
| SOCIAL SECURITY ADMINISTRATION ) | |

To:  The Honorable John T. Nixon, Senior Judge

### REPORT AND RECOMMENDATION

This is a civil action filed pursuant to 42 U.S.C. §§ 405(g) and 1383(c), to obtain judicial review of the final decision of the Social Security Administration ("SSA" or "the Administration"), through its Commissioner, denying plaintiff's application for supplemental security income ("SSI") as provided under the Social Security Act. The case is currently pending on plaintiff's motion for judgment on the administrative record (Docket Entry No. 17), to which defendant has responded (Docket Entry No. 19). Upon consideration of these papers and the transcript of the administrative record (Docket Entry No. 13),[1] and for the reasons given below, the undersigned recommends that plaintiff's motion for judgment be GRANTED, and that the decision of the SSA be REVERSED and the cause REMANDED for further administrative proceedings consistent with this Report.

### I. Procedural History

Plaintiff filed her SSI application on July 30, 2004, alleging the onset of

---

[1] Referenced hereinafter by page number(s) following the abbreviation "Tr."

disability as of April 28, 1984 (Tr. 53, 68-73); she subsequently amended this alleged onset date to correspond with the date of filing of her SSI application. (Tr. 413) Plaintiff alleges disability due to pain from scoliosis, fused spine, hip and shoulder blade problems, and arthritis, and the resulting inability to lift or carry anything, or to bend at the waist. (Tr. 76) Plaintiff's claim was denied at the initial and reconsideration stages of agency review. (Tr. 57-65) She thereafter filed a request for de novo hearing by an Administrative Law Judge ("ALJ"). On September 20, 2007, plaintiff appeared with counsel for her hearing before the ALJ. (Tr. 409-34) Plaintiff testified in response to questioning by both the ALJ and her lawyer, and at the conclusion of this examination the ALJ closed the record and took the matter under advisement.

On November 20, 2007, the ALJ issued a written decision finding plaintiff not disabled. (Tr. 16-24) That decision contains the following enumerated findings:

1. The claimant has not engaged in substantial gainful activity since July 30, 2004, the application date (20 CFR 416.920(b) and 416.971 *et seq.*).

2. The claimant has the following combination of impairments: scoliosis of the lumbar spine with a history of a fusion and Harrington Rod placement in 1996; a winged right scapula secondary to a rib deformity on the right that occurs with rotation of the spine; costochondritis secondary to deformity of a rib on the right that occurs with rotation of the spine; mild arthritis of the right hip; GERD, which is well managed with medication and diet; and asthma with a history of tobacco abuse, which is well controlled with medication (20 CFR 416.920(c)). These more than minimally affect basic work-related activities, therefore the claimant has a "severe" impairment.

3. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

4. After careful consideration of the entire record, the undersigned finds that the

claimant has the residual functional capacity to perform the full range of unskilled sedentary work. She may lift/carry a maximum of 10 pounds. She may stand and walk 2-4 hours during an 8 hour workday. And, she may sit 6 hours total during an 8 hour workday.

5. The claimant has no past relevant work (20 CFR 416.965).

6. The claimant was born on April 28, 1984 and was 20 years old, which is defined as a younger individual age 18-44, on the date the application was filed (20 CFR 416.963).

7. The claimant has at least a high school education and is able to communicate in English (20 CFR 416.964).

8. Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 416.968).

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can reasonably be expected to perform (20 CFR 416.960(c) and 416.966).

10. The claimant has not been under a disability, as defined in the Social Security Act, from July 30, 2004, through the date of this decision (20 CFR 416.920(g)).

(Tr. 18, 19, 23)

On February 24, 2010, the Appeals Council denied plaintiff's request for review of the ALJ's decision (Tr. 5-7), thereby rendering that decision the final decision of the Administration. This civil action was thereafter timely filed, and the court has jurisdiction. 42 U.S.C. §§ 405(g), 1383(c)(3). If the ALJ's findings are supported by substantial evidence, based on the record as a whole, then those findings are conclusive. Id.

## II. Review of the Record

Plaintiff, age 23 at the time of her hearing before the ALJ, has a high school education, but no past relevant work history. She was born with severe scoliosis (abnormal lateral curvature of the spine) which progressed in severity until, in February 1996, at the age of eleven, she underwent spinal fusion surgery at Vanderbilt University Medical Center with placement of stainless steel Harrington rods to straighten her spine. (Tr. 169-72) The surgery was successful in correcting the scoliosis. (Tr. 156-64)

On March 11, 2004, when plaintiff was nineteen years old, she complained of low back pain and chest pain to her family doctor, Robert R. Ladd, M.D., who ordered x-rays of her chest and lumbar spine (Tr. 187) The diagnostic impression following the x-ray was "post-operative changes." (Tr. 203-05) Plaintiff was prescribed Naproxen, Flexeril, and Lortab for relief of her pain. (Tr. 207-08)

Plaintiff was next seen by spinal surgeon John W. Bacon, M.D., on referral from Dr. Ladd. Dr. Bacon gave the following report in a letter dated April 5, 2004:

> I saw Misty on March 22, 2004. She is a nineteen year old female who had scoliosis surgery approximately eight years ago with Herrington Rod instrumentation and posterior spinal fusion. She now has pain in her lower back which radiates to her hips. The pain is worse with bending and lifting maneuvers. She has no leg pain. She was apparently seen several doctors for this and is not happy with the advice she has been given.
>
> Examination shows tenderness from the thoracic to the lumbar region. There is still some deformity in the lumbar region. Muscle spasms are present. Range of motion of her thoracic and lumbar spine is approximately fifty percent normal. Her neurovascular status is intact.
>
> She says she had x-rays recently and was told the rods and fusion are intact.
>
> I have explained to Misty that it is common to have back pain after this type

> surgery. Some of the pain could be from the rods and consideration for removal of them would be in order. Other than that, she is probably having a muscular back pain. I have advised her that if the symptoms are bad enough that she should return to her surgeon and let him evaluate her for possible removal of the rods. . . .

(Tr. 184)

Plaintiff was not inclined to return to her pediatric orthopedic surgeon, and so consulted with another orthopedist, Dr. Roy Terry, M.D., on June 8, 2004. (Tr. 222-24) On examination, Dr. Terry's nurse practitioner observed winging of the right scapula, inequality of the gluteal creases, forward lumbar flexion to forty-five degrees (with all hip motion and no motion in the lumbar spine) causing a significant increase in her pain, with normal heel/toe walk, negative straight leg raise test bilaterally, normal lumbar strength, and reduced patellar and Achilles reflexes. (Tr. 222) The diagnostic impression on this visit was scoliosis and chronic back pain. Id. Further film studies were recommended, and plaintiff was advised of the possibility of consultation with a spine specialist who was supposed to join the clinic later that year. (Tr. 223) The recommendation for further film studies was repeated when plaintiff returned to Dr. Terry in July 2004. (Tr. 221)

On December 1, 2004, plaintiff was seen by Dr. Jerry Lee Surber, M.D., for a consultative examination at government expense. (Tr. 242-47) Dr. Surber's examination revealed "findings consistent with the insertion of the Harrington rod at about the T4 level, and palpable tenderness at that site and distal or inferior to that side extending through and involving L1 through L5 in the midline." (Tr. 244) Range of spinal motion was somewhat limited, particularly on full forward flexion, though she had full range of motion in all extremities. (Tr. 244-45) Plaintiff had no gross asymmetry of any major muscle groups and

5

no evidence of muscle wasting.  She was able to perform squat and stand maneuvers as well as straight leg raises, though some complaints of pain were made with these maneuvers.  (Tr. 245)  Plaintiff's limb and grip strength was normal, and she was able to move easily from the chair to the examination table.  She was able to perform the straight-away, tandem, and heel-toe walks without limitation.  Id.  Based on these examination results and prior medical records including Dr. Terry's office notes, a postoperative note after placement of the Harrington rod in 1996, and x-rays of plaintiff's left and right ribs (Tr. 242), Dr. Surber assessed plaintiff as being "able to occasionally lift or carry up to at least 10 pounds during at least one-third of an eight hour work day[,] . . . to stand or walk with normal breaks for a total of at least up to possibly two or four hours of an eight hour work day provided she was allowed to sit in between the times that she was required to stand, or would be able to sit for up to six hours of an eight hour work day."  (Tr. 246)  This opinion of plaintiff's work-related ability was not shared by the two nonexamining physicians who reviewed plaintiff's medical file in December 2004 and September 2005, respectively; these sources opined that Dr. Surber's assessment was overly restrictive, and that plaintiff was capable of performing a reduced range of light work.  (Tr. 248-55, 275-81)

Dr. William Lyles, M.D., became plaintiff's primary care doctor in early 2005.  (Tr. 140)  Dr. Lyles' practice is focused on obstetrics/gynecology and family medicine.  (E.g., Tr. 287)  On July 12, 2005, Dr. Lyles completed a medical source statement of plaintiff's ability to do work-related activities, opining that she could do "no lifting at all per Dr. Terry;" could stand and/or walk for about one hour and then must sit for one hour; could sit for an undetermined number of total hours, at intervals of less than one hour at a time; was limited in pushing and pulling with the upper and lower extremities; was required to

6

alternate sitting and standing for relief of pain; constantly experienced pain severe enough to interfere with her attention and concentration; was incapable of even low stress jobs; would need to take unscheduled work breaks at least hourly; was likely to be absent from work more than four times per month on account of her maladies or medical treatment; could never engage in postural activities such as climbing, balancing, kneeling, crouching, or crawling; could only occasionally manipulate objects because her hands become numb at times; and, should avoid all exposure to environmental allergens such as dust, humidity, etc. (Tr. 271-74)

On January 4, 2006, Dr. Lyles performed laparoscopic abdominal surgery with lysis of adhesions, to remedy plaintiff's six-month history of pelvic and abdominal pain unrelieved by narcotic pain medication. (Tr. 393-96) Dr. Lyles continued to treat her complaints of pain with medication such as the narcotic painkiller Lortab, and the muscle relaxant Soma. On November 26, 2006, Dr. Lyles saw plaintiff in the emergency room for treatment of an acute exacerbation of her chronic back pain, related to being on her feet a lot during the Thanksgiving weekend. (Tr. 386-92) Dr. Lyles ordered the administration of painkilling injections, and discharged her with instructions to stay on modified bedrest for 24-48 hours and to continue with her home medications. Id.

On December 11, 2006, Dr. Lyles completed another medical source statement of plaintiff's ability to do work-related activities, which in most respects echoes the restrictions assigned in his July 2005 medical source statement. (Tr. 283-86)

On February 10, 2007, plaintiff was seen in the emergency room at Cookeville Regional Medical Center with complaints of neck pain following her involvement in an automobile accident a few days earlier. (Tr. 335-41) She reported having experienced a

7

headache for a couple of days, followed by the pain moving down into her neck; she was not seeking pain medication, but in light of her history of back problems, only wanted assurance that she had not hurt anything in her neck. (Tr. 337) An x-ray of her cervical spine showed no acute abnormality (Tr. 341), and plaintiff was discharged with a diagnosis of cervicalgia due to neck sprain from a motor vehicle collision, and instructions to follow up with her primary care doctor and to utilize the pain medication she already had at home, as needed. (Tr. 335, 338)

    At her September 2007 hearing before the ALJ, plaintiff testified that she lived in a single-wide trailer with her 4-year-old daughter, and that she had been separated from her husband for about a year and a half. (Tr. 414-16) She testified that her mother stays with her up to three days per week, and helps her brush her hair since she has difficulty moving her right hand behind her head. (Tr. 416, 426) Half of plaintiff's bills were paid by her mother, and half by her husband. (Tr. 415) She had quit smoking three weeks prior to the hearing. (Tr .416) She had never had a driver's license, and had only been outside of Tennessee once during the prior year, when she accompanied her mother on a drive to Michigan for a funeral. (Tr. 418) Plaintiff testified that her lower back pain was constant, and that even with medication her pain was unbearable, a 9 or 10 on a ten-point scale. (Tr. 422-23) She testified that she'd been told not to lift or bend, and that being on her feet constantly and even lying down would exacerbate her pain. (Tr. 423) When she sits too long in one place, she gets significant pain down her right leg. (Tr. 424) She testified that she has to constantly change positions between sitting, standing, and walking in order to combat the pain. Id. She estimated that she could walk about 20 or 30 minutes at a time and stand in one place about 15 or 20 minutes at a time. (Tr. 424-25) She says she lifts her

8

daughter into her arms only when she has to, and can lift a gallon of milk out of the refrigerator, but otherwise tries not to lift anything. (Tr. 425) She testified that she needs help putting shoes and pullover shirts on, and is unable to do any cooking, cleaning, or anything outside the home. (Tr. 429-30) She does have friends that come and visit her. (Tr. 431) She testified to having great difficulty sleeping due to discomfort in every position. (Tr. 432)

### III. Conclusions of Law

#### A. Standard of Review

This court reviews the final decision of the SSA to determine whether that agency's findings of fact are supported by substantial evidence in the record and whether the correct legal standards were applied. Elam ex rel. Golay v. Comm'r of Soc. Sec., 348 F.3d 124, 125 (6th Cir. 2003). "Substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 241 (6th Cir. 2007)(quoting Cutlip v. Sec'y of Health & Human Servs., 25 F.3d 284, 286 (6th Cir. 1994)). Even if the evidence could also support a different conclusion, the SSA's decision must stand if substantial evidence supports the conclusion reached. Her v. Comm'r of Soc. Sec., 203 F.3d 388, 389 (6th Cir. 1999).

#### B. Proceedings at the Administrative Level

The claimant has the ultimate burden to establish an entitlement to benefits by proving his or her "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in

9

death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The claimant's "physical or mental impairment" must "result[] from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." Id. at § 423(d)(3). In proceedings before the SSA, the claimant's case is considered under a five-step sequential evaluation process, described by the Sixth Circuit Court of Appeals as follows:

> 1) A claimant who is engaging in substantial gainful activity will not be found to be disabled regardless of medical findings.
>
> 2) A claimant who does not have a severe impairment will not be found to be disabled.
>
> 3) A finding of disability will be made without consideration of vocational factors, if a claimant is not working and is suffering from a severe impairment which meets the duration requirement and which meets or equals a listed impairment in Appendix 1 to Subpart P of the Regulations. Claimants with lesser impairments proceed to step four.
>
> 4) A claimant who can perform work that he has done in the past will not be found to be disabled.
>
> 5) If a claimant cannot perform his past work, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed.

Cruse v. Comm'r of Soc. Sec., 502 F.3d 532, 539 (6th Cir. 2007)(citing, e.g., Combs v. Comm'r of Soc. Sec., 459 F.3d 640, 642-43 (6th Cir. 2006)(en banc)); 20 C.F.R. §§ 404.1520(b)-(f), 416.920 (b)-(f).

The SSA's burden at the fifth step of the evaluation process can be carried by relying on the medical-vocational guidelines, otherwise known as "the grids," but only if the claimant is not significantly limited by a nonexertional impairment, and then only when the claimant's characteristics identically match the characteristics of the applicable grid rule. See

10

Wright v. Massanari, 321 F.3d 611, 615-16 (6th Cir. 2003). Otherwise, the grids cannot be used to direct a conclusion, but only as a guide to the disability determination. Id.; see also Moon v. Sullivan, 923 F.2d 1175, 1181 (6th Cir. 1990). In such cases where the grids do not direct a conclusion as to the claimant's disability, the SSA must rebut the claimant's *prima facie* case by coming forward with proof of the claimant's individual vocational qualifications to perform specific jobs, which is typically obtained through vocational expert ("VE") testimony. See Wright, 321 F.3d at 616 (quoting Soc. Sec. Rul. 83-12, 1983 WL 31253, *4 (S.S.A.)); see also Varley v. Sec'y of Health & Human Servs., 820 F.2d 777, 779 (6th Cir. 1987).

In determining residual functional capacity ("RFC") for purposes of the analysis required at steps four and five above, the SSA is required to consider the combined effect of all the claimant's impairments, mental and physical, exertional and nonexertional, severe and nonsevere. See 42 U.S.C. §§ 423(d)(2)(B), (5)(B); Foster v. Bowen, 853 F.2d 483, 490 (6th Cir. 1988).

### C. Plaintiff's Statement of Errors

Plaintiff argues that the ALJ erred in rejecting the opinion of her treating physician, Dr. Lyles, and in discounting the credibility of her subjective complaints of disabling pain.

As to plaintiff's first contention, the medical opinion of a treating source such as Dr. Lyles is entitled to controlling weight pursuant to 20 C.F.R. § 404.1527(d)(2) if it is well supported by objective, clinical evidence and not substantially opposed on the record. Even where such an opinion is not entitled to controlling weight, the Sixth Circuit has stated that "in all cases there remains a presumption, albeit a rebuttable one, that the opinion of a

11

treating physician is entitled to great deference. . . ." Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 242 (6th Cir. 2007). Accordingly, ALJs must provide "good reasons" for discounting the weight of a treating source opinion. See 20 C.F.R §§ 404.1527(d)(2), 416.927(d)(2); Rogers, 486 F.3d at 242. In this case, the ALJ offered the following rationale for rejecting the opinions contained in the medical source statements submitted by Dr. Lyles:

> The undersigned finds the extent of the residual functional capacity limitations intimated by Dr. Lyles to clearly be excessive. The doctor's own reports fail to reveal the type of significant clinical and laboratory abnormalities one would expect if the claimant were in fact disabled, and the doctor did not specifically address this weakness. The doctor's report appears to contain inconsistencies, and the doctor's opinion is accordingly rendered less persuasive. . . . The residual functional capacity limitations suggested by Dr. Lyles is also inconsistent with the wide variety of daily activities the claimant reported she performs when she filed her disability application. Further, Dr. Lyles is an OB/GYN specialist, and the claimant's main complaints are musculoskeletal in nature.

(Tr. 19-20)

The undersigned finds these reasons for rejecting the opinion of Dr. Lyles to be sufficient. To begin with, it is clear that Dr. Lyles' opinion is substantially opposed on the record, as consultative examiner Dr. Surber and both state agency consultants opined that plaintiff could perform sedentary or light exertional work, respectively. Moreover, while Dr. Lyles opined that plaintiff is restricted from any lifting or carrying at all "per Dr. Terry" (Tr. 271, 283), the records of Dr. Terry (Tr. 221-24) do not appear to support such a restriction.[2] Dr. Lyles treated plaintiff's complaints of chronic back pain due to severe scoliosis by

---

[2]Rather than being restricted from any lifting due to scoliosis-related pain, it appears that plaintiff may have been advised by Dr. Terry to avoid lifting in order to guard against injury to those lumbar vertebrae not stabilized by the Harrington rods, since plaintiff would not be a surgical candidate due to her condition. (Tr. 115)

renewing her prescriptions for pain medications including Lortab (a narcotic painkiller) and Soma (a muscle relaxant), which were noted to help relieve the pain. (Tr. 310) As the ALJ referenced, Dr. Lyles did not make note of any physiological abnormalities indicative of unrelenting pain prior to offering his medical source statements of plaintiff's extreme functional limitation, nor do his treatment notes at any point reflect any concern with altering his approach to treatment or referring plaintiff to more specialized care for pain management. Following plaintiff's involvement in an automobile accident in February 2007 (and after both medical source statements of record had been made), Dr. Lyles increased the strength of her Lortab prescription (Tr. 327-29) and changed her muscle relaxant from Soma (which was no longer covered by insurance) to Flexeril (Tr. 329-30), to Robaxin (which was noted to help control her muscle spasms but caused itching), and finally to Zanaflex, which evidently helped control her symptoms (Tr. 321-28) Considering this evidence in light of the standard of review, the undersigned finds that substantial evidence supports the ALJ's decision to discount the weight of Dr. Lyles' assessments.

However, the ALJ further professed to find a significant disparity between plaintiff's report of activities she was capable of performing in 2004, when she submitted paperwork to the agency in support of her disability claim, and her hearing testimony in 2007. This disparity is the sole reason cited by the ALJ for disbelieving plaintiff's complaints of disabling pain. In making his credibility finding, the ALJ properly described the rubric established in, e.g., 20 C.F.R. § 416.929. (Tr. 20-21) Upon finding "a medically determinable impairment(s) that could reasonably be expected to produce [the claimant's] symptoms," the ALJ is required to then evaluate the intensity and persistence of those symptoms by

13

reference to the record as a whole, including both the objective medical evidence and other evidence bearing on the severity of the claimant's functional limitations.  20 C.F.R. § 416.929(c)(1)-(3).  There is no question that a claimant's subjective complaints can support a finding of disability -- irrespective of the credibility of that claimant's statements before the agency -- if they are grounded in an objectively established, underlying medical condition and are borne out by the medical and other evidence of record.  <u>Id.</u>; <u>see</u>, <u>e.g.</u>, <u>Walters v. Comm'r of Soc. Sec.</u>, 127 F.3d 525, 531 (6th Cir. 1997); SSR 96-7p, 1996 WL 374186, at *1, 5 (describing the scope of the analysis as including "the objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual, and any other relevant evidence in the case record[;]" "a finding that an individual's statements are not credible, or not wholly credible, is not in itself sufficient to establish that the individual is not disabled.").  Such "other evidence" which the ALJ is bound to consider includes evidence of the following factors:

> (i) Your daily activities;
> 
> (ii) The location, duration, frequency, and intensity of your pain or other symptoms;
> 
> (iii) Precipitating and aggravating factors;
> 
> (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms;
> 
> (v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms;
> 
> (vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and
> 
> (vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 416.929(c)(3).

It is well established that an ALJ may properly consider the credibility of a claimant in conjunction with his consideration of the medical and other evidence described above, and that this credibility finding is due great weight and deference in light of the ALJ's opportunity to observe the claimant's demeanor while testifying. Jones v. Comm'r of Soc. Sec., 336 F.3d 469, 476 (6th Cir. 2003). In considering the ALJ's finding on the weight of plaintiff's subjective complaints, this court is "limited to evaluating whether or not the ALJ's explanations for partially discrediting [plaintiff] are reasonable and supported by substantial evidence in the record." Id.

As mentioned above, the ALJ indicated that, at the time of filing her disability application in 2004, plaintiff was able to perform a relatively robust range of activities according to her responses to agency questionnaires:

> At that time, her toddler was an infant, and she had to give round the clock care to her baby. This included changing the child's diapers and feeding the child. She subsequently potty trained her child. . . . The claimant additionally indicated that she performs such daily activities as visiting with others, talking on the telephone, tending to her personal self-care needs, listening to the radio and/or to music, watching television (especially movies), cooking, and paying bills (Exhibits 11E, 10E, 7E, 6E, and 4E). The claimant further reported that she performs light housework such as washing dishes, dusting, running the vacuum, and doing the laundry. Quite simply, the claimant's ability to perform such a wide variety of daily activities reflects on her overall ability to work, and tends to minimize her complaints of pain and other subjective complaints.

(Tr. 22)

As plaintiff points out, this description of plaintiff's ability to engage in "such a

15

wide variety of daily activities" is more than a bit misleading when compared to the evidence from which it was drawn. In her September 28, 2004 report of daily functioning (Exhibit 4E, Tr. 93-100), plaintiff reported waking up when her husband does so that he could lift their baby out of the crib, since she was unable to do so. (Tr. 93) She further reported confining the baby to the area of the living room with baby gates, since she was not physically able to keep up with the baby otherwise. Id. She stated that she was able to keep up with feeding and diapering the baby throughout the day, but did not bathe the baby, instead waiting for her husband to arrive home and take care of that task. Id. She further reported that her husband helped her brush her hair, that her meal preparation was limited to frozen dinners and sandwiches, and that her housework was limited to dusting and folding the laundry that her husband brings to her. (Tr. 94-95) Finally, plaintiff reported needing assistance when she did leave her home, since she could not lift the baby into and out of the car. (Tr. 97)

Likewise, in her March 12, 2005 report of daily functioning, plaintiff stated that she continued to need her husband to lift their baby out of the crib in the morning; that she received help from her family members with childcare; that she needed help brushing the back of her hair, as well as shaving her legs; that she could not cook at the stove because of the bending and standing required; and, that she could only fold laundry that was brought to her. (Exhibit 11E, Tr. 129-36)

The same limitations are also reflected in plaintiff's mother's report to the agency (Tr. 108-16), as well as in plaintiff's report to the consultative psychological examiner (Tr. 237-38). Such restrictions on plaintiff's functional abilities, coupled with her significant dependence upon others to perform the basic requirements of daily living, are simply not

16

supportive of the finding that plaintiff is overstating her pain-related limitations and in fact is capable of sustaining work on a regular and continuing basis. E.g., Rogers v. Comm'r of Soc. Sec., 486 F.3d at 248-49. Moreover, plaintiff's ability to lift a gallon of milk out of the refrigerator, or to lift her four-year-old daughter when necessary because the child is sick or hurt (Tr. 425), does not amount to substantial evidence undermining the credibility of her pain complaints. Despite the recommended ruling that the weight of Dr. Lyles' assessments was not improperly discounted, the objective medical evidence in this case clearly supports the existence of pain-producing impairments, e.g., in April 2004, Dr. Bacon, a spinal surgeon who saw plaintiff in consultation, stated that it was common for patients with Harrington rod implantation to have both muscular back pain and pain from the rods themselves, and found upon examining plaintiff that she was tender from the thoracic to the lumbar region, with some lumbar spine deformity, muscle spasms present, and spinal range of motion only fifty percent normal. (Tr. 184) Moreover, while Dr. Lyles did not make particular mention of muscle spasm or range of motion limitations in his notes preceding his disability assessments, those records show that plaintiff's chronic back pain was frequently noted and continuously treated, including one examination finding of "extreme pain to light palpation on spine." (Tr. 317) Indeed, plaintiff's complaints of severe pain have not been questioned by any treating source at any relevant time.

        Considering the objective medical evidence, the fact that plaintiff was at all times treated with significant pain medication, the fact that she has sought psychiatric care due to depression over her physical inability to fully interact with her child (Tr. 401), and the consistent reports of plaintiff and others that her daily activities are severely limited due

17

to the pain associated with significant movement, it does not appear that the ALJ's credibility finding -- explicitly based on her daily activity level "minimiz[ing] her complaints of pain and other subjective complaints" (Tr. 22) -- is supported by substantial evidence. Therefore, despite the significant deference which such findings typically deserve, <u>Jones v. Comm'r of Soc. Sec.</u>, 336 F.3d 469, 476 (6th Cir. 2003), the undersigned must conclude that this case is subject to reversal and remand for further administrative consideration of plaintiff's pain and related limitations under the standards set out in 20 C.F.R. § 416.929 and SSR 96-7p.

## IV. Recommendation

In light of the foregoing, the Magistrate Judge recommends that plaintiff's motion for judgment on the administrative record be GRANTED, and that the decision of the SSA be REVERSED and the cause REMANDED for further administrative proceedings consistent with this Report.

Any party has fourteen (14) days from receipt of this Report and Recommendation in which to file any written objections to it with the District Court. Any party opposing said objections shall have fourteen (14) days from receipt of any objections filed in which to file any responses to said objections. Failure to file specific objections within fourteen (14) days of receipt of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. <u>Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>Cowherd v. Million</u>, 380 F.3d 909, 912 (6th Cir. 2004)(en banc).

**ENTERED** this 13th day of September, 2011.

                                           s/ John S. Bryant
                                           JOHN S. BRYANT
                                           UNITED STATES MAGISTRATE JUDGE